FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 21, 2021

SEAN F. MCAVOY, CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>ISRAEL CASTANEDA-NICOLAS,<br><br>                    Defendant. | No. 1:19-CR-02052-SAB-1<br><br>**ORDER DISMISSING INDICTMENT** |

Before the Court is Defendant's Motion to Dismiss, ECF No. 42. The Court heard arguments on the motion on January 6, 2021. Defendant was represented by Craig Webster and Jeremy Sporn. The Government was represented by Richard Burson. Defendant was present in the courtroom in the custody of the U.S. Marshals.

Defendant requested that the Court find his underlying removal order void and therefore dismiss the Indictment against him. The Court took the motion under advisement. Subsequent to the parties' arguments, the Ninth Circuit decided *United States v. Bastide-Hernandez*, 986 F.3d 1245 (9th Cir. 2021), which addressed the jurisdictional arguments in Defendant's pending motion. Thus, the Court ordered supplemental briefing from the parties regarding the impact of *Bastide-Hernandez* on the arguments in the Motion to Dismiss. ECF No. 66. The Government and Defendant submitted their supplemental briefs on February 8 and 24, 2021, respectively. ECF Nos. 66, 68.

**ORDER DISMISSING INDICTMENT** # 1

Having reviewed the briefing, the parties' oral arguments, and the relevant case law, the Court grants Defendant's Motion to Dismiss and dismisses the Indictment in this case.

## Facts

The following facts are pulled from the Indictment, ECF No. 1; Defendant's Motion to Dismiss, ECF No. 42; and the Government's Response to Defendant's Motion to Dismiss, ECF No. 53.

Defendant is charged with Illegal Reentry in violation of 8 U.S.C. § 1326. It is alleged that Defendant is a citizen and national of Mexico who has been denied admission, excluded, deported or removed from the United States on eight separate occasions: (1) on or about September 29, 2005, at Nogales, Arizona; (2) on or about March 26, 2009, at San Ysidro California; (3) on or about September 26, 2009, at Nogales, Arizona; (4) on or about February 6, 2010, at San Ysidro, California; (5) on or about October 22, 2010, at San Ysidro, California; (6) on or about October 15, 2011, at San Ysidro, California; (7) on or about February 15, 2013, at Nogales, Arizona; and (8) on or about November 15, 2016, at San Ysidro, California. Defendant was then found in the Eastern District of Washington without the express consent of the Attorney General or Secretary of the Department of Homeland Security to reapply for admission into the United States.

Defendant first came to the United States with his mother and father in 1989 or 1990, when he was approximately 18 months old. Defendant's family left Mexico after his grandfather and uncle were both murdered. Defendant is the oldest of eight children in the family. Only Defendant and his oldest sibling were born outside of the United States—all of his six other siblings and half-siblings were born and largely still reside here.

Defendant's father died in a car accident when Defendant was young. After his father's death, Defendant became involved in some minor criminal offenses.

**ORDER DISMISSING INDICTMENT** # 2

He dropped out of high school in 9th grade to work full-time in the Yakima Valley fields and support his family, alongside his mother and oldest sibling.

Defendant's first encounter with the Immigration and Nationality Service ("INS") occurred in January 2002, when Defendant was 13 years old. While Defendant was incarcerated at the Yakima Juvenile Justice Center on probation violations, INS officials personally served him with a Notice to Appear ("NTA"). Defendant was then released to INS, who in return released Defendant to his mother. But Defendant did not appear for his removal hearing and thus was ordered removed *in absentia* on July 2, 2002.

A few months later, in September 2002, INS once again found Defendant at the Yakima Juvenile Justice Center on probation violations. However, an INS official realized that Defendant's first NTA was invalid because, despite the regulations governing service on minors under the age of 14, INS only served the NTA on Defendant—who was 13 years old at the time—and not on Defendant's mother. Thus, INS filed a motion to dismiss the July 2002 removal order and to reopen Defendant's removal proceedings. INS then personally served Defendant, who was now 14 years old, with a new NTA on September 27, 2002. The NTA stated that Defendant was removable for being present without admission in violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (codified at 8 U.S.C. § 1182(a)(6)(A)(i)). On October 1, 2002, Defendant retained the services of an immigration attorney.

On October 18, 2002, Defendant and his attorney appeared for his removal hearing by video. The immigration judge began by noting that the parties had some off-the-record discussions regarding the case. ECF No. 53-1, Exhibit 9 at 0:43. The immigration judge also noted that Defendant's previous NTA had been defective and thus the removal proceedings had been terminated and reopened. *Id.* at 0:45-1:00. The immigration judge then confirmed with Defendant's counsel that Defendant was (1) waiving his notice and appeal rights; (2) admitting the factual

allegations on the NTA; (3) conceding removability; (4) designating Mexico as the country of removal; and (5) only seeking relief in the form of voluntary departure. *Id.* at 1:01-1:24. The government's lawyer noted for the record that Defendant had a juvenile criminal record, but the immigration judge confirmed that Defendant was only 14 years old and thus granted the request for voluntary departure under safeguards. *Id.* at 1:30-2:20. After the hearing, the immigration judge served Defendant with the Order Granting Voluntary Departure via fax to Defendant's detention center, which informed Defendant that he would ineligible for voluntary departure for a period of 10 years. ECF No. 53-1, Exhibit 10. Defendant departed the United States on October 29, 2002.

Defendant reentered the United States on or about June 24, 2005. On July 22, 2005, INS officials found Defendant—now 17 years old—incarcerated at the Yakima Juvenile Justice Center on state charges for failing to appear, being a minor in possession of alcohol, obstructing a law enforcement officer, and use of drug paraphernalia. On or around this same day,[1] Defendant was given a notice informing him of his right to be represented by a lawyer and his right to a hearing before an immigration judge—Defendant ticked the boxes indicating that he had read and understood the notice, but checked the box stating "[t]he subject admitted removability and requested to return to his/her country voluntarily, without a hearing." ECF No. 53-1, Exhibit 12 at 2. On July 27, 2005, Defendant's state charges were dismissed. Both INS agents and Defendant then attempted to contact Defendant's mother to see if he could be released to her custody, but neither were successful in getting in touch with her.

---

[1] The first page of the notice is dated June 22, 2005, but the second page of the notice is dated July 22, 2005. ECF No. 53-1, Exhibit 12 at 1-2.

**ORDER DISMISSING INDICTMENT** # 4

Despite Defendant waiving his right to a hearing, he was still served with an NTA on July 28, 2005.[2] ECF No. 53-1, Exhibit 13 at 2. Defendant appeared in front of the immigration judge in Seattle for his removal hearing on September 21, 2005. The immigration judge began the hearing by asking if Defendant wanted to proceed in English, rather than rely on the Spanish translator who was present and who had begun translating, which Defendant confirmed he did. ECF No. 42-2 at 0:22-0:32. The immigration judge asked Defendant whether he had the NTA, legal aid, and appeal rights forms in front of him, which Defendant also confirmed he did. *Id.* at 0:32-0:46. The immigration judge then informed Defendant, who was not represented by counsel, that he had the right to a lawyer and that the immigration judge would continue the removal hearing to another day if Defendant needed more time to find a lawyer. *Id.* at 0:46-0:54. The immigration judge asked Defendant if he wanted to find a lawyer or if he wanted to proceed by himself—in response, Defendant stated that he would like to be sent back to Mexico. *Id.* at 0:54-1:03. The immigration judge once again confirmed that Defendant wanted to proceed on his own before swearing Defendant in—Defendant admitted that he was a citizen of Mexico, came to the United States without permission in June 2005, was now subject to removal, and wanted to be removed to Mexico. *Id.* at 1:04-2:10.

The immigration judge asked the government's lawyer whether Defendant was eligible for voluntary departure, to which the lawyer responded that Defendant had already been granted voluntary departure at his removal hearing in October 2002. *Id.* at 2:11-2:21. Defendant himself also confirmed that he had been granted

---

[2] The Government hypothesizes that it was "presumably because [Defendant] was still under 18." ECF No. 53 at 7. The NTA listed the address of the immigration court in Seattle where Defendant was to appear but listed both the date and time as "to be set." ECF No. 53-1, Exhibit 13 at 1.

**ORDER DISMISSING INDICTMENT** # 5

voluntary departure, but subsequently came back to the United States. *Id.* at 2:22-2:30. The immigration judge stated that he would not extend this privilege to Defendant again and that Defendant had to go back to Mexico. *Id.* at 2:31-2:35. The immigration judge told Defendant that he could appeal, but also stated that—if Defendant accepted the decision as final—he would be returned to Mexico. *Id.* at 2:35-2:42. The immigration judge asked Defendant if he accepted the decision as final and Defendant replied "yes." *Id.* at 2:42-2:46. Defendant was thus removed on September 23, 2005.

But four days later, on September 27, 2005, Defendant was found back in the United States, hiding in a riverbed along with 11 other men near Pichaco, Arizona. Defendant told immigration officials that he and several other individuals had walked through a hole in the border fence between the United States and Mexico. Defendant stated that he had agreed to pay a guide $1,500 to take him to Washington State, where Defendant planned to work as a waiter to pay off the debt. ECF No. 53-1, Exhibit 17 at 2.

Just as in July 2005, Defendant was given a notice of his rights and chose to waive his right to a hearing. But Defendant was still given a hearing in front of an immigration judge, rather than being subject to expedited removal or having his prior removal order reinstated. ECF No. 42-13. Defendant received his second NTA on September 27, 2005. ECF No. 42-6.[3]

---

[3] The NTA listed the address of the immigration court in Arizona where Defendant was to appear, but once again listed the date and time as "to be set." ECF No. 42-6. Defendant's Notice of Hearing ("NOH") subsequently listed the date and time of Defendant's removal hearing and the Certificate of Service on the Notice of Hearing has the option "Personal Service" circled—but the Notice of Hearing is dated September 29, 2005 and Defendant's signature does not appear on the Notice of Hearing to confirm personal service. ECF No. 42-7.

**ORDER DISMISSING INDICTMENT** # 6

Defendant appeared in front of the immigration judge in Arizona on September 29, 2005 with the aid of an interpreter, though Defendant's previous immigration proceedings had been conducted in English. At the hearing, Defendant appeared alongside another 17-year-old juvenile, neither of whom were represented by counsel. ECF No. 42-5 at 0:26-0:43. The immigration judge began the hearing by noting that Defendant had just been removed eight days prior on September 21, 2005, from Seattle. *Id.* at 1:16-1:51. The immigration judge informed Defendant of the charges against him and asked Defendant if he understood (1) the charges against him and (2) why the government was seeking removal, to which he responded yes. *Id.* at 1:52-2:25.

The immigration judge then asked both Defendant and the other juvenile if they had received copies of the relevant documents. *Id.* at 3:33-3:53.[4] The immigration judge also stated that, because they were both under 18 years of age, they had the right to counsel at no expense to the government and the right to have family or friends present at the hearing. *Id.* at 3:53-4:04. The immigration judge offered to give them more time to find people to be present at the hearing—but stated that, if they wanted to proceed with the hearing on their own, they would probably be deported to Mexico later that evening. *Id.* at 4:04-4:33. The immigration judge asked Defendant if he had any questions regarding his rights to an attorney or to have a family member/friend present, to which Defendant responded no. *Id.* at 4:34-4:42. The immigration judge also asked Defendant if he would like to have more time so that one of those people could be present, to which Defendant again responded no. *Id.* at 4:42-4:50.

The immigration judge then asked Defendant a series of questions, such as whether he was born in Mexico, whether his mother or father had ever been a

---

[4] In the audio recording of the hearing, the immigration judge references two specific sets of documents, but it is difficult to make out what he says.

**ORDER DISMISSING INDICTMENT** # 7

citizen of the United States, and whether Defendant had reentered the United States, to which Defendant responded yes, no, and yes, respectively. *Id.* at 6:00-6:18. Defendant also stated, in response to the immigration judge's questions, that (1) he had entered the United States by crossing the desert, rather than coming in through a port of entry, and that (2) when he was previously removed from the United States from Seattle on September 21, 2005, he was flown to Michoacan. *Id.* at 6:19-6:52. Based on Defendant's responses, the immigration judge found that the charges against Defendant were sustained—he then asked Defendant if he had $10 for the bus ride back to Mexico and whether Defendant had any family living legally in the United States, to which Defendant responded yes and no respectively, even though Defendant did have family living legally in the United States. *Id.* at 6:53-7:14. Defendant also told the immigration judge that he did not fear returning to Mexico, even though Defendant states in his Declaration that he "feared going back to Mexico" and thus "[t]hat is why I would come straight back to the United States whenever I was removed." *Id.* at 7:15-7:22; ECF No. 42-9. The immigration judge asked Defendant where his mother and father lived and Defendant replied Michoacan, even though Defendant's father had passed away in 1996 and his mother was living in Washington State at the time. ECF No. 42-5 at 7:25-7:35. The immigration judge once again asked Defendant if he feared returning to his parents' home in Mexico and Defendant replied no. *Id.* at 7:41-7:49.

The immigration judge asked Defendant how he had come to the attention of immigration officials in Seattle, but Defendant's response is inaudible. *Id.* at 7:54-8:40. At the conclusion of Defendant's portion of the hearing, the immigration judge stated "because it does not appear that you'll be able to immigrate to the United States any time soon, and you've been deported before, I will deny voluntary departure and order your removal from the United States to Mexico." *Id.* at 8:40-8:57. The immigration judge informed Defendant of his right to appeal, but

stated that—if Defendant did not appeal—Defendant would be deported later that evening to Mexico, would have a deportation on his record, and would be taken to prison if he tried to reenter the United States within the next 20 years. *Id.* at 10:34-12:04. The immigration judge then asked Defendant whether he wanted to appeal the deportation order, to which Defendant replied no. *Id.* at 12:06-12:10. Defendant was thus removed to Mexico for second time on September 29, 2005.

In total, Defendant's indictment lists eight removals from the United States, including his September 29, 2005 removal from Arizona. ECF No. 1. But Defendant submits that his subsequent seven removals from March 9, 2009 to November 15, 2017 were all reinstatements of the original September 29, 2005 removal order. *See* ECF No. 42-11. Thus, Defendant is only challenging the validity of the September 29, 2005 removal order.[5]

## Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the

---

[5] Defendant actually has two existing removal orders: one from September 23, 2005 and one from September 29, 2005. However, Defendant's Indictment only charges him for the second September 29, 2005 removal order. The Government states that this is because it could not locate Defendant's completed and fingerprinted Form I-205 verification of removal from the first September 23, 2005 removal. ECF No. 1; *see also* ECF No. 53 at 8 n.3.

At several points in Defendant's briefing, Defendant seems to be challenging the sufficiency of both his September 23, 2005 and his September 29, 2005 removal orders. Because the Indictment only charges Defendant on the basis of the latter, the Court will only consider the validity of the September 29, 2005 removal order.

allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). But a district court can make preliminary findings of fact necessary to decide the pre-trial motion so long as the court's findings do not "invade the province of the ultimate finder of fact." *Id.* (internal quotation and citation omitted).

A predicate to a violation of 8 U.S.C. § 1326 is the existence and legal validity of a prior order of removal. *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014). Thus, a defendant charged with violating 8 U.S.C. § 1326 may challenge the validity of his underlying removal order. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004); 8 U.S.C. § 1326(d). In order for a defendant to succeed on collaterally attacking his underlying removal order, the defendant must be able to satisfy the § 1326(d) requirements: that the defendant (1) exhausted any administrative remedies that may have been available to seek relief against the order; (2) the removal proceedings at which the order was issued improperly deprived the noncitizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair, which requires that the defendant show that "he suffered prejudice as a result of the defects" in the removal proceedings. 8 U.S.C. § 1326(d); *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015). Defendant bears the burden of showing that he was prejudiced by the due process violation, which requires him to show that it was plausible that he would have received some form of relief from removal had his rights not been violated in the removal proceedings. *Valdez-Novoa*, 780 F.3d at 915.
//

**ORDER DISMISSING INDICTMENT** # 10

## Discussion

Defendant argues that his September 29, 2005 removal order was invalid for four reasons: (1) Defendant was wrongfully denied the opportunity to present an application for voluntary departure; (2) Defendant was wrongfully denied the opportunity to withdraw his application for admission; (3) Defendant, as a juvenile proceeding in his immigration hearings without counsel, did not receive the requisite procedural protections; and (4) the immigration court lacked subject matter jurisdiction due to a defective NTA.

The Government in response argues that (1) because Defendant had already been granted voluntary departure in 2002, he was not eligible for this relief at his September 29, 2005 removal hearing; (2) the immigration judge nevertheless still adjudicated Defendant's application for voluntary departure, but denied the application in part because Defendant lied under oath about his positive equities; (3) Defendant was not eligible for withdrawal of application for admission because there was no evidence that Defendant's removal would "ill-serve justice"; (4) the immigration judge specifically informed Defendant that he had the right to an attorney and a representative and offered Defendant time to find both, but Defendant turned it down; and (5) the immigration court validly had subject matter jurisdiction over the proceedings.

The Court first addresses Defendant's argument that the immigration court lacked jurisdiction over his September 29, 2005 removal hearing because Defendant did not receive a curative NOH providing him with the date, time, and location of his removal proceedings. Defendant concedes that the Ninth Circuit's recent decision in *Bastide-Hernandez* "directly impacts" Defendant's jurisdictional arguments. ECF No. 68 at 3. But he argues *Bastide-Hernandez* conflicts with the Ninth Circuit's previous decision in *Karingithi v. Walker*, 913 F.3d 1158, and the Court should instead apply *Karingithi*. *Id.* at 15. However, the Circuit in *Bastide-Hernandez* specifically stated that it intended to clarify any confusion regarding

when jurisdiction vests and that "[t]he only logical way to interpret and apply *Karingithi* and *Aguilar Fermin* is that the jurisdiction of the immigration court vests upon the filing of an NTA, even one that does not at that time inform the alien of the time, date, and location of the hearing." *Bastide-Hernandez*, 986 F.3d at 1248. This Court is bound by *Bastide-Hernandez* and therefore rejects Defendant's jurisdictional arguments in support of his Motion to Dismiss.

The Court now moves on to Defendant's remaining three arguments—that his September 29, 2005 removal order is invalid because (1) Defendant was prejudiced by being wrongfully denied an opportunity to seek voluntary departure; (2) Defendant was prejudiced by being wrongfully denied an opportunity to withdraw his application for admission; and (3) Defendant was prejudiced by failing to receive the procedural protections he was entitled to as a *pro se* minor. The Court addresses each argument in turn.

1. Whether Defendant was prejudiced by the immigration judge's failure to allow him to develop the issue of voluntary departure

A noncitizen may be eligible for one of two forms of voluntary departure in lieu of removal: pre-conclusion and post-conclusion. A noncitizen is eligible for voluntary departure prior to the conclusion of their removal hearings if the noncitizen is not deportable for an aggravated felony or terrorist activities. 8 U.S.C. § 1229c(a)(1). The noncitizen must also (1) make the request for voluntary departure prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing; (2) make no additional requests for relief; (3) concede removability; (4) and waive appeal of all issues. 8 C.F.R. § 1240.26(b)(1)(i). On the other hand, a noncitizen is eligible for voluntary departure at the conclusion of their removal hearings if the immigration judge finds that: (1) the noncitizen has been physically present for a period of at least one year immediately preceding the date the NTA was served; (2) the noncitizen has been a person of good moral character for at least 5 years immediately preceding the

application for voluntary departure; (3) the noncitizen is not deportable for an aggravated felony or terrorist activities; and (4) the noncitizen has established by clear and convincing evidence that the noncitizen has the means to depart the United States and intends to do so. 8 U.S.C. § 1229c(b)(1); 8 C.F.R. § 1240.26.

"Compliance with the statutory requirements for suspension of deportation does not automatically entitle an alien to such relief"—whether an immigration judge chooses to grant voluntary departure is a matter of discretion. *Delgado-Chavez v. I.N.S.*, 765 F.2d 868, 869 (9th Cir. 1985). Moreover, a noncitizen is not eligible for either form of voluntary departure if the noncitizen was previously permitted to voluntarily depart after having been found inadmissible under 8 U.S.C. § 1182(a)(6)(A).[6] 8 USC. § 1229c(c).

If the record before the immigration judge "contains an inference" that the noncitizen is eligible for voluntary departure, "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran-Enriquez v. I.N.S.*, 884 F.2d 420, 422-23 (9th Cir. 1989)). If the immigration judge fails to so advise the noncitizen or fails to give him this opportunity, due process is violated. *Id.*; *see also United States v. Cruz-Aguilar*, 394 F. Supp. 3d 1313, 1322 (E.D. Wash. 2019) (holding that the immigration judge violated due process rights by failing to give the defendant a genuine opportunity to develop the issue of voluntary departure).

To satisfy the prejudice prong of a § 1326(d) collateral attack, a defendant must show that there was a "plausible ground for relief from deportation." *Arrieta*, 224 F.3d at 1079 (internal quotation and citation omitted). This means that the defendant must show more than a "theoretical" possibility of relief, but does not

---

[6] Section 1182(a)(6)(A) states that any noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

**ORDER DISMISSING INDICTMENT** # 13

have to show that relief was "probable." *Raya-Vaca*, 771 F.3d at 1207. To determine whether voluntary departure would be a plausible ground for relief, the district court must use a two-step process. *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). First, the district court must look at the same positive and negative equities that would be relevant to an immigration judge's discretionary decision to grant voluntary departure. *Id.* Positive factors include long residence, close family ties to the United States, and humanitarian needs. *Id.* Negative factors include the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character. *Id.* Second, the district court must determine whether, in light of these equities and the circumstances of the noncitizen's case, the defendant has shown that it is plausible that they would have received relief. *Id.* In assessing whether the defendant has carried their burden, the district court looks at whether other noncitizens under similar circumstances received relief. *Id.* at 928. But if there is only a single case on point where a similarly situated noncitizen received relief, then it is only "'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure," which is "plainly insufficient." *Id.* (internal quotations and citation omitted).

Defendant argues that the immigration judge at his September 29, 2005 removal hearing failed to adequately inform Defendant of his right to voluntary departure and failed to develop a record that comported with constitutional due process. ECF No. 42 at 12. Specifically, Defendant argues that (1) he was eligible for pre-conclusion voluntary departure because he met all the requirements under 8 C.F.R. § 1240.26(b)(1)(i), but the immigration judge failed to advise Defendant of this relief or give Defendant a genuine opportunity to develop an evidentiary record in support of such relief; (2) Defendant may also have been eligible for post-conclusion voluntary departure, but again was not given an evidentiary

**ORDER DISMISSING INDICTMENT** # 14

hearing to develop the issue; and (3) the immigration judge violated due process because in deciding whether to grant discretionary relief, he was required to develop and evaluate Defendant's individual positive and negative equities on the record, but did not do so. *Id.* at 12-24.

The Government in response does not appear to dispute that an immigration judge's failure to inform a noncitizen of voluntary departure constitutes a due process violation. However, the Government argues that Defendant cannot show prejudice under § 1326(d)(3) and thus his collateral attack must fail. ECF No. 53 at 13. Specifically, the Government argues (1) because Defendant was previously granted voluntary departure in October 2002, he was ineligible for this relief at his September 29, 2005 removal hearing; (2) even if Defendant had been eligible for voluntary departure, the immigration judge presiding over Defendant's September 29, 2005 removal hearing gave Defendant an opportunity to address his positive equities, but Defendant did not provide truthful answers; and (3) given both Defendant's answers to the immigration judge and his immigration/criminal history, it is not plausible that the immigration judge would have granted Defendant's request for voluntary departure. *Id.* at 15-21. Finally, the Government argues that, in addition to being unable to show prejudice, Defendant also cannot show exhaustion of administrative remedies or lack of a meaningful opportunity for judicial review because he knowingly and validly waived his appeal rights. *Id.* at 21-25.

Defendant does not dispute that § 1229c(c) states that, if a noncitizen was previously permitted to voluntarily depart after having been found inadmissible under § 1182(a)(6)(A), a noncitizen is no longer eligible for voluntary departure. Instead, Defendant argues that his October 2002 removal hearing—the hearing at which Defendant was allowed to voluntarily depart—did not comply with the requirements of 8 U.S.C. § 1229a and therefore was procedurally deficient. Thus, Defendant argues that this hearing provided no basis for finding that Defendant

**ORDER DISMISSING INDICTMENT** # 15

was inadmissible under § 1182(a)(6)(A) and that Defendant was still eligible to seek voluntary departure on September 29, 2005.

The Court finds that Defendant was ineligible for voluntary departure at his September 29, 2005 removal hearing. Even though the immigration judge at Defendant's October 2002 hearing did not make any factual findings on the record to support the grounds for Defendant's removability, the immigration judge noted that Defendant—through his attorney—admitted the allegations in the NTA and conceded removability. ECF No. 53-1, Exhibit 9 at 1:10-1:22. Additionally, Defendant's NTA for the October 2002 removal hearing specifically stated that Defendant was "subject to removal from the United States pursuant to . . . section 212(a)(6)(A)(i) of the Immigration and Nationality Act," which refers to § 1182(a)(6)(A). ECF No. 53-1, Exhibit 7 at 1. Finally, the immigration judge at the October 2002 hearing granted Defendant voluntary departure under safeguards. ECF No. 53-1, Exhibit 9 at 2:16-2:20. This is sufficient to satisfy § 1229c(c) and therefore Defendant was statutorily ineligible for voluntary departure at his September 29, 2005 removal hearing.

Defendant argues, however, that even if he was statutorily barred from receiving voluntary departure at his September 29, 2005 removal hearing, he was still eligible to withdraw his application for admission.[7]

//

//

//

---

[7] Defendant raised this argument for the first time in his Reply Brief. ECF No. 57. Thus, the Court gave the Government an opportunity to submit additional briefing on the issue of withdrawal of application for admission. ECF No. 63. The Government submitted its supplemental brief on January 13, 2021, and Defendant submitted his response on January 20, 2021. ECF Nos. 64, 65.

**ORDER DISMISSING INDICTMENT** # 16

2. <u>Whether Defendant was prejudiced by the immigration judge's failure to allow him to withdraw his application for admission</u>

There are two opportunities when a noncitizen can request withdrawal of application for admission instead of being removed: (1) when a noncitizen presents himself at a port of entry and seeks admission to the United States or (2) when a noncitizen is in front of an immigration judge as part of a formal removal hearing. 8 U.S.C. § 1225(a)(4); *see also* 8 C.F.R. § 1235.4 (allowing withdrawal of application for admission when a noncitizen is applying for admission) and 8 C.F.R. § 1240.1(d) (stating that an immigration judge may allow a noncitizen in removal proceedings to withdraw their application for admission).

Here, Defendant appeared before an immigration judge for a formal removal hearing in September 2005—thus, 8 C.F.R. § 1240.1(d) governs. Under Section 1240.1(d), "[a]n immigration judge shall not allow an alien to withdraw an application for admission unless the alien, in addition to demonstrating that he . . . possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." *Id.*

The Ninth Circuit has not yet decided the question of whether an immigration judge's failure to inform a noncitizen of the option of withdrawal constitutes a due process violation. *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1019 n.7 (9th Cir. 2011) ("We have held that an IJ presiding over a removal hearing has a duty to inform an alien of his . . . 'apparent eligibility' for certain kinds of immigration relief, and that an IJ's failure to perform this duty constitutes a due process violation . . . We have never held, however, that withdrawal of an application for admission qualifies as an immigration 'benefit' to which [the] duty to inform applies."). But the Ninth Circuit has emphasized that, even if this failure to inform a noncitizen of the option of withdrawal constitutes a due process

violation, the noncitizen must be able to show that the immigration judge granting withdrawal "would be in the interest of justice." *Id.* at 1019

The Board of Immigration Appeals ("BIA") in *In re Gutierrez,* 19 I. & N. Dec. 562 (BIA 1988), provided guidance for what factors are relevant for an immigration judge to consider when determining whether withdrawal of application for admission would be "in the interest of justice." The BIA held that, unlike in the voluntary departure context, "the balancing equities test is not an appropriate method" to determine whether a noncitizen should be permitted to withdraw their application for admission. *Id.* at 564. Thus, factors such as the length of the noncitizen's presence in the United States; the noncitizen's employment record; the strength of the noncitizen's family ties to the United States; the noncitizen's U.S. citizen children; and the fact that the noncitizen has a spouse who will be eligible for citizenship in the near future are not relevant. *Id.* at 565. Instead, the BIA stated that the immigration judge should allow withdrawal if the noncitizen "establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice," such as whether the noncitizen's entry into the United States was by means of fraud and if the noncitizen had been convicted of specified crimes. *Id.* at 564-65; *see also Cisneros-Resendiz*, 656 F.3d at 1021 (citing 8 U.S.C. § 1182(a)(2) and § 1182(a)(6)(C)(i)).

Here, Defendant argues that the immigration judge's failure to advise him of this relief was a due process violation. ECF No. 57 at 5-8. Defendant also argues that he was prejudiced by this violation because he was eligible for withdrawal of application for admission and, had he been allowed to pursue this relief, he might have been allowed to depart the United States without formal removal. *Id.* at 5.[8]

---

[8] In arguing that it is plausible that he would have been allowed to withdraw his application for admission, Defendant cites to the factors laid out in the Field

**ORDER DISMISSING INDICTMENT** # 18

The Government in response argues that the immigration judge did not violate due process by failing to inform Defendant about withdrawal of application for admission because withdrawal was intended to prevent noncitizens "who may be inadvertently or unintentionally in violation of the immigration laws or regulations" from being "subject to the harsh consequences of a formal removal order." ECF No. 64 at 9. The Government also argues that it is not plausible that Defendant would have received withdrawal of application for admission because there was nothing in the record to suggest that Defendant had merely inadvertently violated immigration laws. *Id.* at 10-11.

First, the Court finds that the immigration judge's failure to advise Defendant of withdrawal of application for admission was a due process violation sufficient to satisfy § 1326(d)(1) and (2). Though the Ninth Circuit has not specifically held that failure to advise a noncitizen of withdrawal of application for admission is a due process violation, the Circuit has stated that "the IJ must advise the alien of th[e] possibility [of relief from removal] and give him the opportunity to develop the issue." *Arrieta*, 224 F.3d at 1079. Additionally, as the Government notes in its their brief, "[t]he only substantive difference between voluntary

---

Manual. ECF No. 57 at 5-8. However, the factors in the Field Manual are intended to provide guidance on whether a noncitizen *arriving at a port of entry* should be allowed to withdraw their application for admission. *See* Inspector's Field Manual. 17.2 WITHDRAWAL OF APPLICATION FOR ADMISSION, 2007 WL 7710869 ("Field Manual") ("A nonimmigrant applicant for admission who does not appear to the inspecting officer to be admissible may be offered the opportunity to withdraw his or her application for admission rather than be detained for a removal hearing before an immigration judge or placed in expedited removal."). Here, the Field Manual factors are inapplicable because Defendant appeared at a formal removal hearing in front of an immigration judge.

**ORDER DISMISSING INDICTMENT** # 19

departure and withdraw[al] of application for admission is that some undocumented immigrants . . . are not eligible for voluntary departure because Congress barred them from eligibility in the statute." ECF No. 64 at 8. Therefore, because voluntary departure and withdrawal of application for admission both constitute relief from removal, the Court finds that an immigration judge's failure to advise a noncitizen of withdrawal of application for admission constitutes a due process violation.

The Court also finds that Defendant plausibly could have withdrawn his application for admission and therefore the immigration judge's failure to advise of this relief prejudiced him sufficient to satisfy § 1326(d)(3). Though the immigration regulations say that withdrawal of application for admission is appropriate for inadvertent violations of immigration law, the regulations do not state that this is the *only* scenario for which withdrawal is appropriate. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312-01. Additionally, the BIA in *Gutierrez*—which was later relied upon by the Ninth Circuit in *Cisneros-Resendiz*—stated that the immigration judge should allow withdrawal if the noncitizen establishes that withdrawal would be "in the interest of justice," which considers whether the noncitizen's entry into the United States was by means of fraud and/or if the noncitizen had been convicted of specified crimes (i.e., crimes of moral turpitude or a violation of a law relating to controlled substances). *Id.* at 564-65; *see also Cisneros-Resendiz*, 656 F.3d at 1021 (citing 8 U.S.C. § 1182(a)(2) and § 1182(a)(6)(C)(i)).

Here, there is no evidence that Defendant reentered the United States by means of fraud prior to his September 29, 2005 removal hearing. 8 U.S.C. § 1182(a)(6)(C)(i). For Defendant's first reentry in June 2005, the record does not contain any information about how Defendant arrived in the United States. As for Defendant's second reentry in September 2005, Defendant stated that he walked

**ORDER DISMISSING INDICTMENT** # 20

through a hole in the border fence between the United States and Mexico and specifically confirmed that he did not arrive at a port of entry. ECF No. 53-1, Exhibit 17 at 2; ECF No. 42-9 at 6:19-6:52. Thus, under *Gutierrez* and *Cisneros-Resendiz*, Defendant was not barred from withdrawing his application for admission on this ground.

There is also no evidence Defendant committed a crime of moral turpitude prior to his September 29, 2005 removal hearing. 8 U.S.C. § 1182(a)(2)(A)(i)(I). Defendant's juvenile criminal record prior to 2005 only involved charges such as obstructing law enforcement, second degree vehicle prowling, consumption/possession of liquor by a minor, and reckless endangerment. These crimes hardly rise to the level of "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society." *Vidal y Planas v. Landon*, 104 F. Supp. 384, 388 (S.D. Cal. 1952). Thus, Defendant was also not barred from withdrawing his application for admission on this ground.

Finally, Defendant does have one count of a controlled substance violation in Yakima County Superior Court from 2000. ECF No. 10 at 3. However, there is no information on the record regarding the type of controlled substance that was involved.[9] Without more concrete information, the Court cannot determine whether Defendant's 2000 violation actually involved a "drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Additionally, even assuming that the controlled substance was one that fell under § 802(6), Defendant was only 12 years old at the time of the violation. Given that (1) the nature of Defendant's controlled substance violation is unclear; (2) Defendant had no other barriers to withdrawing his application for admission; and (3) Defendant appeared as a *pro se* minor during his

_____

[9] Defendant in his brief states that it was for possession of marijuana. ECF No. 42 at 6.

**ORDER DISMISSING INDICTMENT** # 21

September 29, 2005 removal hearing, due process demanded that Defendant be informed of his potential avenues for relief.

Thus, the Court finds that the immigration judge violated Defendant's due process rights by failing to inform him—a *pro se* minor—about the possibility of withdrawing his application for admission. The Court also finds that Defendant was prejudiced by this violation because it is plausible that he would have received this relief had he been advised of his right to pursue it. Consequently, the Court finds that this violation rendered Defendant's September 29, 2005 removal proceedings fundamentally unfair.

3. Whether Defendant was prejudiced by failing to receive the procedural protections he was entitled to as a *pro se* juvenile

The Ninth Circuit has stated that, when a noncitizen appears *pro se*, it is the immigration judge's duty to fully develop the record, especially since these noncitizens "often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country." *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002). In fact, the Circuit has stated that "it is critical that the IJ scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (internal quotation and citation omitted). These concerns are only heightened when the *pro se* noncitizen is a minor, which is why unrepresented minors receive additional special protections in removal proceedings. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1036 (9th Cir. 2016) ("We would be naive if we did not acknowledge that having an unrepresented minor in immigration proceedings poses an extremely difficult situation.").

For example, 8 C.F.R. § 1240.10(c) states that "[t]he immigration judge shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend." Section

1240.10(c) also states that, if the immigration judge does not accept an admission of removability, he or she shall direct a hearing on the issues. Additionally, the Ninth Circuit has stated an immigration judge, during a *pro se* minor's removal proceeding, must factor in the minor's age, intelligence, education, information, and understanding and ability to comprehend. *J.E.F.M.*, 837 F.3d at 1037 (internal quotation and citation omitted). Finally, an immigration judge must ensure that the *pro se* minor's waiver of the right to counsel is knowing and voluntary and should "indulge every reasonable presumption against waiver." *Id.*

Defendant argues that, given that he was a 17-year-old *pro se* minor with an 8th grade education and no family present during his September 29, 2005 removal proceedings, he was entitled to heightened due process protections. ECF No. 42 at 30. Specifically, Defendant argues that the immigration judge had a duty to (1) not accept Defendant's admission of removability; (2) inquire into whether Defendant's waiver of the right to counsel was knowing, voluntary, and intelligent; and (3) ensure that Defendant's NTA was also served on his mother. *Id.* at 30-34. He also argues that violating a juvenile's due process protections during immigration proceedings amounts to "structural, *per se* error" and thus Defendant is not required to show prejudice—but even if he were, Defendant could show that, had his due process rights been protected, it is plausible that he would have received relief. *Id.* at 33-34.

In response, the Government argues that the immigration judge sufficiently protected Defendant's due process rights as a *pro se* minor and, even if not, Defendant was not prejudiced by any alleged procedural defects. ECF No. 53 at 25. Specifically, the Government argues that the immigration judge at the September 29, 2005 removal hearing specifically advised Defendant that he could have a lawyer, family member, or representative present for the hearing, but Defendant refused and instead expressed a desire to return to Mexico as soon as possible. *Id.* at 25-28. The Government also argues that Defendant is not entitled to

a presumption of prejudice. Finally, the Government argues that Defendant cannot show prejudice because, even if he had been given these procedural protections, he still would not have been eligible for relief from removal. *Id.* at 26-27.

The Court finds that the immigration judge at Defendant's September 29, 2005 removal hearing violated Defendant's due process rights as a *pro se* minor by accepting Defendant's admission of removability without further inquiry and by not ensuring that Defendant's waiver of the right to counsel was knowing, voluntary, and intelligent. Though the immigration judge asked Defendant if he wanted to be represented by a lawyer, offered him more time to find one, and asked Defendant questions about his family and previous immigration history, these questions still did not rise to the level of the heightened procedural protections required for *pro se* minors in removal proceedings. The total length of Defendant's second September 29, 2005 removal hearing—which also involved another *pro se* minor's removal proceedings—was only 13 minutes and 45 seconds. ECF No. 42-5.[10] The immigration judge also did not hold a separate hearing regarding whether Defendant was removable, even though Defendant was under 18 years old and was not accompanied by an adult. 8 C.F.R. § 1240.10(c); *see also* No. 42-9 at 6:00-7:14 (the immigration judge asking Defendant only a couple of questions before finding the charges against Defendant sustained). Thus,

---

[10] Defendant's first September 21, 2005 removal hearing was even worse—it lasted only 2 minutes and 54 seconds. ECF No. 42-2. And though Defendant's indictment only charges him on the basis of the second September 29, 2005 removal, it is hard to imagine that Defendant's first removal had *no* impact on the September 29, 2005 removal proceedings. *See* ECF No. 42-9 at 1:16-1:51 (where the September 29, 2005 immigration judge noted that Defendant had just been removed eight days prior from Seattle).

the Court finds that Defendant's due process rights were violated sufficient to satisfy § 1326(d)(1) and (2).

Moreover, as discussed above, it is plausible that Defendant could have received withdrawal of application for admission under *Gutierrez* and *Cisneros-Resendiz*. Thus, the Court finds that the immigration judge's failure to advise Defendant of withdrawal of application for admission—especially given his uniquely vulnerable position as a *pro se* minor appearing alone in removal proceedings—rendered Defendant's September 29, 2005 removal hearings fundamentally unfair.

Because he has satisfied the requirements for a collateral attack under § 1326(d), Defendant's September 29, 2005 removal order cannot serve as the basis for the present unlawful reentry charge. Therefore, because Defendant's underlying removal order is invalid, the Court dismisses the Indictment.

Accordingly, **IT IS HEREBY ORDERED:**

1.      Defendant's Motion to Dismiss, ECF No. 42, is **GRANTED**.

2.      The Indictment in the above-captioned matter is **DISMISSED with prejudice**.

3.      The trial date and any pending pretrial motions and deadlines are **STRICKEN**.

4.      Defendant shall be **RELEASED** from the Yakima County Jail.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

**DATED** this 21st day of April 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER DISMISSING INDICTMENT** # 25